**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD SEARS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:17-cv-50** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **VINCENT MOONEY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## MEMORANDUM

## I.      BACKGROUND

<u>Pro</u> <u>se</u> Plaintiff Richard Sears ("Plaintiff"), who is currently confined at the State

Correctional Institution in Albion, Pennsylvania ("SCI Albion"), initiated the above-captioned

action by filing a complaint pursuant to 42 U.S.C. § 1983 on January 9, 2017, against numerous

employees of the Department of Corrections ("DOC") at the State Correctional Institution in

Coal Township, Pennsylvania ("SCI Coal Township").  (Doc. No. 1.)  On September 25, 2017,

Plaintiff filed an amended complaint, asserting claims of interference with his right to use the

grievance system, retaliation, interference with his right of free speech, defamation, denial of

access to the courts, unconstitutional conditions of confinement, deliberate indifference to his

medical needs, due process violations, equal protection violations, and excessive force in

violation of the First, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States

Constitution, as well as claims alleging violations of the Universal Declaration of Human Rights

and various state torts.  (Doc. No. 33.)

After engaging in discovery, Defendants filed a motion for summary judgment (Doc. No.

84) and supporting materials (Doc. Nos. 85, 86, 99).  Plaintiff subsequently filed a motion to

exclude alleged evidence of his deposition (Doc. No. 89) and a motion to strike Defendants'

motion for summary judgment (Doc. No. 92).  On February 6, 2019, Magistrate Judge Carlson

denied Plaintiff's motion to strike. (Doc. No. 96.) After receiving two (2) extensions of time (Doc. Nos. 101, 102, 103, 104), Plaintiff filed a response to Defendants' statement of facts (Doc. No. 105) and brief in opposition (Doc. No. 106). Defendants then filed a reply brief (Doc. No. 110) after receiving an extension of time to do so (Doc. Nos. 107, 109). Accordingly, Defendants' motion for summary judgment (Doc. No. 84) and Plaintiff's motion to exclude (Doc. No. 89) are ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III.   DISCUSSION

### A.     Plaintiff's Motion to Exclude Alleged Evidence of Deposition

Defendants submitted a transcript of Plaintiff's deposition in support of their motion for summary judgment. (Doc. No. 86-1.) Plaintiff moves to exclude his deposition, arguing that upon his review of the transcript, he "discovered a plethora of pertinent testimony did get erroneously or illegally omitted from the recording or transcription of said deposition." (Doc. No. 89 at 2.) He maintains that he "listed as many changes and corrections as he could list on the single 'errata sheet' provided to him," and has attached the errata sheet to his motion. (Id. at 2, 6.) Plaintiff believes the transcript "has [the] tendency to cause unfair prejudice to [him], create confusion of the issues, and mislead the Court at summary judgment." (Doc. No. 90 at 2.)

Upon review of the errata sheet, the Court observes that Plaintiff takes issue with misspelled words and the omission of words and phrases in the transcript. (Doc. No. 89 at 6.) Evidence, however, "should not be excluded on summary judgment on hypertechnical grounds." See Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989). The Court is not persuaded by Plaintiff's argument that the transcript causes unfair prejudice, confuses the issues, and misleads the Court. Accordingly, the Court will deny Plaintiff's motion to exclude. (Doc. No. 89.) To the extent the errata sheet is relevant, the Court will consider it when evaluating Defendants' motion for summary judgment.

### B. Motion for Summary Judgment

#### 1. Statement of Material Facts[1]

On June 9, 2014, Plaintiff was transferred to a hard cell within SCI Coal Township's Restricted Housing Unit ("RHU"). (Doc. No. 85 ¶ 1.) A hard cell is "used for observation purposes for inmates who display some type of mental instability or might harm themselves."[2] (Id. ¶ 3.) Unlike a regular cell, hard cells do not have tables and stools, and they have wickets that are used to pass items, such as food trays, through the doors. (Id. ¶ 4.) Plaintiff was never provided an explanation of why he was placed in the hard cell. (Id. ¶ 7.) Plaintiff stayed in the hard cell for eighty-five (85) days. (Id. ¶ 2.)

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts. (Doc. No. 85.)

Plaintiff has complied with M.D. Pa. L.R. 56.1 by filing a response to Defendants' statement of undisputed material facts. (Doc. No. 105.) Moreover, while Plaintiff's verified amended complaint (Doc. No. 33) may be treated as an affidavit in opposition to the motion for summary judgment, the allegations must be based on personal knowledge, and the Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, the Court recites the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[2] Plaintiff maintains that he was "non-violent and had no mental instability, and actually requested to get moved out of [the hard cell] to a regular cell and was refused." (Doc. No. 105 ¶ 3.)

Plaintiff experienced disruptions in his daily activities while assigned to the hard cell. (Id. ¶ 5.)  He complained about his placement "and sent request slips to the sergeants to be moved to a different cell but his requests were ignored."[3]  (Id. ¶ 6.)  On August 4, 2014, Plaintiff asked Defendant McDonald to use his fingernail clippers, and Defendant McDonald responded that "the clippers were not there."[4]  (Id. ¶¶ 8-9.)

During Plaintiff's time in the hard cell, Plaintiff experienced issues as to the cell's plumbing.  (Id. ¶ 10.)  Specifically, the water was leaving "dark traces around the inside of his cup and was making his throat irritated."[5]  (Id.)  Inmates in neighboring cells did not have the same issue with their water.  (Id. ¶ 11.)  Plaintiff complained about the plumbing issues to RHU officers, including Defendants Kistler, Shipe, Drucis, Howel, Burrows, Heistand, and

---

[3] Plaintiff adds that he complained to Defendants Kistler, Shipe, Drucis, Howel, Burrows, Heistand, and Krzykowski, and that these Defendants "had authority to move him and all had knowledge of the problem but all refused to move him or taunted him or made some type of derogatory statement, and just took it as a joke regardless of his suffering and severity of his complaints."  (Id. ¶ 6.)  He also maintains that Defendants Kistler and Shipe told him "that that's just how it is and that he . . . just ha[s] to deal with it."  (Id.)

[4] Plaintiff adds that Defendant McDonald told him that he was "the one who initiated the whole thing."  (Id. ¶ 9.)  He "understood that to mean he . . . was being retaliated against for speaking freely and making complaints about the hard cell."  (Id.)

[5] Plaintiff maintains that Defendants refused either to fix the plumbing or move him to a different cell.  (Id. ¶ 10.)  According to Plaintiff, the water was "so awful and foul that it left black dark traces around the inside of his white Styrofoam cup and irritated his throat during his entire 85 days in the hard cell and that he felt tortured."  (Id.)

Krzykowski.[6]  (Id. ¶ 12.)  Defendants Kistler, Shipe, Krzykowski, Drucis, and Howel had the authority to move Plaintiff, but Defendant Heistand did not.[7]  (Id. ¶ 13.)

Plaintiff was moved to a regular cell on September 4, 2014.  (Id. ¶ 14.)  Nothing of note occurred with respect to Plaintiff while Plaintiff was assigned to that cell.  (Id. ¶ 15.)  Plaintiff was moved to another regular cell on September 29, 2014.  (Id. ¶ 16.)  At lunchtime on that day, Defendant Lenker and another officer placed Plaintiff's meal tray on the wicket, but before Plaintiff could reach for the tray, the wicket was closed, and the tray fell to the floor.  (Id. ¶ 17.)  Plaintiff called out and the unnamed officer returned, saw the tray on the floor, and stated that he would notify Defendant Lenker.[8]  (Id. ¶ 18.)  Later that day, Defendant McDonald came to Plaintiff's cell.[9]  (Id. ¶ 19.)  Plaintiff asked Defendant McDonald to look at the tray on the floor and stated that he needed a new tray, but Defendant McDonald refused to do so and walked away.  (Id. ¶ 20.)  Plaintiff heard Defendant McDonald report that he had refused to give up his tray.[10]  (Id. ¶ 21.)  Defendant Baker then made a racially charged comment to Plaintiff.  (Id. ¶ 22.)  Plaintiff complained to Defendant Novalis about the tray and complained to Defendant

---

[6] Plaintiff adds that these Defendants and other RHU officers refused to have the plumbing fixed. (Id. ¶ 12.)

[7] Plaintiff contends that Defendants Kistler, Shipe, Krzykowski, Drucis, and Howel were fully aware of the problems with the plumbing and water and still refused to move him to another cell. (Id. ¶ 13.)

[8] Plaintiff adds that the unnamed officer also saw the food on the floor, and that Defendant Lenker refused to help even though Plaintiff made him "fully aware that he . . . was hungry and in need of another tray."  (Id. ¶ 18.)

[9] Defendants maintain that Defendant Baker was with Defendant McDonald.  (Doc. No. 85 ¶ 19.) Plaintiff, however, indicates that Defendant McDonald was alone.  (Doc. No. 105 ¶ 19.)

[10] Plaintiff maintains that this statement was a lie.  (Id. ¶ 21.)

Peters about Defendant McDonald because Defendant Peters was Defendant McDonald's supervisor.[11]  (Id. ¶¶ 23-24.)

Plaintiff subsequently received a misconduct for refusing to give up the tray.[12]  (Id. ¶ 25.) Defendant Scicchitano signed off on the misconduct.  (Id. ¶ 31.)  Later that day, Defendant Howel walked past Plaintiff "at mealtime, laughing, and did not give him a tray."[13]  (Id. ¶ 26.) Plaintiff heard other officers, including Defendants Shipe, Heistand, and Hayes, laughing while they were standing at the bottom of the tier, so he wrote a grievance.  (Id. ¶ 27.)  Plaintiff "went about 20-some hours without food."  (Id. ¶ 28.)  The next morning, Plaintiff received a food loaf meal.[14]  (Id. ¶ 29.)  He was also placed on movement restriction for seven (7) days, meaning that he could not shower or go to the exercise yard.[15]  (Id. ¶ 30.)  Plaintiff received the food loaf for nine (9) meals over a three (3)-day period.[16]  (Id. ¶ 32.)

On October 14, 2014, Plaintiff was moved to another regular cell, which had a leaking toilet and sink.  (Id. ¶¶ 33-34.)  Plaintiff complained about the leaks to Defendant Gilbert, but the

---

[11] Plaintiff contends that Defendant Novalis refused to help Plaintiff obtain another tray and that Defendant Peters did nothing to help him or to deter the behavior.  (Id. ¶¶ 23-24.)

[12] Plaintiff maintains that the Hearing Examiner ultimately dismissed the misconduct.  (Id. ¶ 25.)

[13] According to Plaintiff, Defendant Howel also stated, "[Y]ou want to take shots we'll fire shots back," and Plaintiff interpreted this comment to mean that he would be retaliated against.  (Id. ¶ 26.)

[14] Plaintiff contends that he received food loaf because of the false misconduct written by Defendant McDonald.  (Id. ¶ 29.)

[15] Plaintiff maintains this restriction was also a result of the false misconduct written by Defendant McDonald.  (Id. ¶ 30.)

[16] Plaintiff adds that he received "ice cold" food loaf during each of these meals.  (Id. ¶ 32.)

leaks were not fixed.[17] (Id.) Plaintiff would use toilet paper or cloth to prevent the leaks from spreading. (Id. ¶ 35.) Further, Plaintiff observed an "awful smell" in connection with the leaking. (Id. ¶ 36.) The toilet was also "back-flushing," and sometimes "other people's feces would flush into the toilet even when it was not in use."[18] (Id. ¶ 37.)

On December 12, 2014, the sink and toilet flooded Plaintiff's cell. (Id. ¶ 39.) When Plaintiff "got out of bed to pray, he slipped, fell, and hurt his knee, which had an open wound."[19] (Id.) No one responded when Plaintiff pressed the call button in his cell. (Id. ¶ 40.) When Defendant Gilbert conducted rounds of the unit, Plaintiff informed him of his injury, and Defendant Gilbert responded that he would notify the medical department.[20] (Id. ¶ 41.) The medical department did not respond immediately, but, rather, arrived during normal rounds, which occurred hours after Plaintiff's incident. (Id.) Plaintiff was given a Band-Aid for the

---

[17] Plaintiff states that he complained about the leaks for "about an entire month" before a flood occurred. (Id. ¶ 34.)

[18] Plaintiff states that he told Defendant Gilbert and other officers about the leaking and back-flushing, but that they refused to resolve these issues. (Id. ¶ 37.) Defendants maintain that Plaintiff testified that he could tolerate these issues. (Doc. No. 85 ¶ 38.) Plaintiff, however, contends that he was meant that he was able to tolerate these problems "after the two major floods" described infra. (Doc. No. 105 ¶ 38.)

[19] Plaintiff adds that he suffered "long-lasting knee pain" as a result of his fall and that he had previously undergone knee surgery "at the same location . . . where he sustained the open wound." (Id. ¶ 39.)

[20] Plaintiff maintains that Defendant Gilbert "was aware of the severity of the problem because [Plaintiff] showed [him] his . . . own wound and [Defendant] Gilbert [saw] that [Plaintiff's] skin was missing." (Id. ¶ 41.)

wound.  (Id.)  Additionally, Plaintiff complained to officers in the RHU about the plumbing issue, which went unresolved.[21]  (Id. ¶ 42.)

On January 6, 2015, a major flood occurred, with feces and urine coming out of Plaintiff's sink and toilet.[22]  (Id. ¶ 43.)  The flood spread to about four (4) other cells.  (Id.)  The extension cords and electrical wires for Plaintiff's typewriter, radio, and television were on the floor and were submerged in the water.[23]  (Id. ¶ 44.)  Plaintiff complained to Defendant Gilbert during rounds, and Defendant Gilbert responded that he would call maintenance.[24]  (Id. ¶ 45.)  Hours later, staff from the maintenance department arrived, and Plaintiff was moved to the shower while they worked on the plumbing and cleaned the cell.[25]  (Id. ¶ 46.)  When Plaintiff was moved back to his cell, it flooded again, prompting staff to go "through the same process to have the cell cleaned."  (Id. ¶ 47.)  That time, the issue was fixed to the extent that the cell did not flood again.  (Id. ¶ 48.)

---

[21] Plaintiff contends that he complained about the plumbing issues to Defendants Gilbert and Howel and other RHU officers four about a month and a half and that they "still refused to have the plumbing problem fixed" even after the flood and Plaintiff's injury.  (Id. ¶ 42.)

[22] Plaintiff adds that feces and urine got on his property, paperwork, boxes, commissary items, and typewriter.  (Id. ¶ 43.)

[23] Plaintiff adds that his feet were also submerged in the water and that Defendant Gilbert observed the conditions but did nothing to remove him from the cell.  (Id. ¶ 44.)

[24] Plaintiff asserts that Defendant Gilbert "kept walking past the cell laughing" and left him in the cell for hours.  (Id. ¶ 45.)

[25] Plaintiff suggests that maintenance did not arrive until approximately four (4) hours after the flood occurred.  (Id. ¶ 46.)

### 2. Claims Against Defendants Mooney, Varner, Kelley, Shomper, Merritt, Weikel, Scicchitano, and Peters

In his complaint, Plaintiff alleges that Defendants Mooney, Varner, Kelley, Shomper, Merritt, Weikel, Scicchitano, and Peters violated his rights by "systematically denying or dismissing every grievance" submitted by Plaintiff and by "actively failing or refusing to address all issues" raised by Plaintiff in his grievances. (Doc. No. 33 ¶ 202.) Defendants assert that they are entitled to summary judgment because Plaintiff has not described how they had any personal involvement in the alleged violations of his rights.

Liability may not be imposed under § 1983 on the traditional standards of respondeat superior. See Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)). In Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." See id. at 106 n.7. The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."). Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action

when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); see also Rode, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

In opposition, Plaintiff maintains that these Defendants "had knowledge of the violations or past misbehaviors through [his] grievances and acquiesced in the violations by failing or refusing to address or correct [them]." (Doc. No. 106 at 4.) Specifically, Plaintiff asserts that they had notice "of the repeated failure or refusal to take preventative action and have the plumbing [in the cells] fixed, repaired, or replaced and of the repeated failure or refusal to protect and immediately remove him from the hazardous living conditions of those cells." (Id. at 5.) While the review of grievances will not establish personal involvement in an underlying violation, several courts have concluded that a supervisory official may be held liable stemming

from the review of a grievance alleging an ongoing violation because the official "is personally involved in that violation because he is confronted with a situation he can remedy directly." See Mayo v. Oppman, No. CV 17-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), report and recommendation adopted, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); Gibbs v. Univ. Corr. Healthcare, No. CV 14-7138 (MAS) (LHG), 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); Whitehead v. Rozum, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012). In the instant case, however, the evidence before the Court indicates that Plaintiff did not present these Defendants with grievances intended to correct ongoing violations, but, rather, submitted grievances only with the intention of addressing past violations. Cf. Talley v. Wetzel, No. 2:18-cv-0230, 2018 WL 6198364, at *2-3 (W.D. Pa. Nov. 28, 2018) (concluding that the inmate-plaintiff had stated plausible supervisory liability claims because he submitted grievances for each day he was subjected to the challenged conditions). Thus, as a matter of law, Defendants Mooney, Varner, Kelley, Shomper, Merritt, Weikel, Sccichitano, and Peters cannot be held liable based upon their participation in after-the-fact review of his grievances. See Brooks, 167 F. App'x at 925. Accordingly, the Court will grant summary judgment in favor of these Defendants as to Plaintiff's claims against them.[26]

---

[26] Defendants also argue that Plaintiff has failed to allege that Defendant Kistler had any personal involvement in the violations of his rights. (Doc. No. 99 at 11-14.) Upon review of Plaintiff's amended complaint, however, the Court disagrees with this assertion. To the extent that Plaintiff seeks to hold Defendant Kistler liable based upon his responses to Plaintiff's grievances, he cannot for the reasons set forth above. However, as discussed infra, Plaintiff alleges that Defendant Kistler retaliated against him by refusing to move him from the hard cell.

### 3.     Plaintiff's First Amendment Claims

#### a.     Right to Redress Grievances

Plaintiff also maintains that Defendants interfered with his First Amendment right to seek redress of his grievances, presumably due to their failure to his grievances in a way that was favorable to him.  (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.)  Prisoners, however, do not have a constitutional right to prison grievance procedures.  See Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007).  Thus, a prison official's failure to investigate or respond favorably to an inmate's grievances does not constitute a constitutional violation.  See Stringer v. Bureau of Prisons, Fed. Agency, 145 F. App'x 751, 753 (3d Cir. 2005); Thibodeau v. Watts, No. 1:CV-05-2505, 2006 WL 89213, at *5 (M.D. Pa. Jan. 6, 2006).  Moreover, while "[p]risoners do have a constitutional right to seek redress of their grievances from the [G]overnment, . . . that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address his grievances."  See Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997).

To the extent Plaintiff alleges that Defendants violated his rights to access the courts, he cannot maintain such a claim.  In order to sustain such a claim, an inmate must allege facts demonstrating an "actual injury" to his litigation efforts.  See Lewis v. Casey, 518 U.S. 343, 349 (1996).  To establish an actual injury, an inmate must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  See id.; see also O'Connell v. Williams, 241 F. App'x 55, 57 (3d Cir. 2007).  "[A]n inmate cannot establish a relevant actual injury simply by establishing that his prison's law library or legal assistance . . . is subpar in some theoretical sense."  Lewis, 518 U.S. at 351; see also Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008) (observing that a "claim rest[ing] solely on the ground that the defendants confiscated . . . legal materials" is insufficient on its face to support a denial of access to the courts claim).  Rather, to

establish a right of access to the courts claim, a plaintiff must plead that he lost an opportunity to file a case in court and that he could not subsequently file that case after the interference with the right of access to the court ceased.  See Christopher v. Harbury, 536 U.S. 403, 415 (2002).  In the instant case, nothing in the record establishes that Plaintiff either lost an opportunity to file a case in court or that he could not subsequently file a case after the alleged interference with his right of access to the courts ceased.  Thus, the Court will grant Defendants summary judgment as to Plaintiff's claims that Defendants violated his First Amendment right to redress his grievances.

### b.    Right to Freedom of Speech and Expression

Plaintiff next suggests that Defendants' actions violated his First Amendment rights to freedom of speech and expression.  (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.) "[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment."  Beard v. Banks, 548 U.S. 521, 528 (2006).  The Constitution, however, "sometimes permits greater restriction of such rights in a prison than it would allow elsewhere."  See id.  To recover under § 1983 for a violation of this First Amendment right, a plaintiff "must allege that the defendant intended to inhibit speech protected by the First Amendment, and that his 'speech was in fact chilled or intimidated.'"  See Proverb v. O'Mara, No. 08-cv-431-PB, 2009 WL 368617, at *14 (D.N.H. Feb. 13, 2009) (quoting Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989)).  Here, nothing in the record establishes that Defendants acted in any way intended to inhibit Plaintiff's right to free speech or expression.  Accordingly, the Court will grant summary judgment to Defendants as to these claims.

**c.      Right to Be Free from Defamation**

Next, Plaintiff maintains that Defendants' actions violated his First Amendment right to be free from defamation of character.  (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.) Defamation, however, is actionable under § 1983 only "if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."  See Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1989).  Thus, "to make out a . . . claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006).  This showing has become known as the "stigma plus" test.  See Graham v. City of Phila., 402 F.3d 139, 142 n.2 (3d Cir. 2005).  "To satisfy the 'stigma' part of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false."  Hill, 455 F.3d at 236.  "To satisfy the 'plus' requirement, a plaintiff must demonstrate that the alleged defamation harming [his] reputation 'occurs in the course of or is accompanied by extinguishment of a right or status guaranteed by law or the Constitution.'"  Mun. Revenue Servs., Inc. v. McBlain, No. 06-4749, 2007 WL 879004, at *4 (E.D. Pa. Mar. 19, 2007).

Here, nothing in the record before the Court suggests that Defendants made public false statements about Plaintiff.  Likewise, nothing in the record suggests that any alleged defamation extinguished a right or status guaranteed to Plaintiff by law or the Constitution.  Accordingly, the Court will grant Defendants summary judgment as to Plaintiff's First Amendment claims regarding defamation.

## d.    Retaliation

Plaintiff also raises retaliation claims against Defendants.  Specifically, he asserts that: (1) Defendants Kistler, Shipe, Krzykowski, Howel, Drucis, Burrows, and Heistand retaliated against him by subjecting him to the hard cell conditions; (2) Defendant McDonald retaliated against him by refusing him use of his nail clippers, writing a false misconduct, and placing him on food loaf and movement restriction, which meant he could not shower or go to the exercise yard for a week; (3) Defendants Lenker, McDonald, Baker, Novalis, Shipe, Heistand, Hayes, and Howel retaliated against him by denying him a food tray; (4) Defendant Gilbert retaliated against him by refusing to fix the leaks in his cell and by not immediately removing him from the cell when it flooded on January 6, 2015; (5) Defendant Kelley retaliated against him by designating Defendant Scicchitano to serve as the officer responding to his grievance; and (6) Defendants Scicchitano, Mooney, Weikel, Shomper, Kistler, Peters, Varner, and Merritt retaliated against him by dismissing his grievances.  (Doc. No. 33 ¶¶ 190, 193, 196, 199, 202.)  According to Plaintiff, all of these actions were taken in retaliation for his submission of written grievances as well as his verbal complaints.  (Id. ¶¶ 190, 193, 196, 199, 202.)  Defendants assert that they are entitled to summary judgment on these claims because Plaintiff cannot establish two of the three necessary elements for a claim of retaliation.  (Doc. No. 99 at 16-17.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary

firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

In the instant case, Defendants concede that Plaintiff engaged in protected activity by filing grievances. (Doc. No. 99 at 16); see also Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011). Plaintiff's verbal complaints constitute protected activity, as well. See Brewer v. Kamas, 533 F. Supp. 2d 318, 329 (W.D.N.Y. 2008) (citing Smith v. Woods, No. 9:03-CV-480, 2006 WL 1133247, at *10 (N.D.N.Y. 2006)); Davila-Bajana v. Holohan, No. 04-253 Erie, 2007 WL 2811633, at *5 (W.D. Pa. Sept. 24, 2007) (assuming that an inmate-plaintiff's verbal

complaints were constitutionally protected activity). Defendants argue, however, that Plaintiff cannot establish either that adverse action was taken by Defendants against him or the existence of a causal connection between such adverse action and Plaintiff's protected activity. (Doc. No. 99 at 16-17.) The Court considers these arguments in turn below.

To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimus." See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). As noted supra, Plaintiff alleges several instances of adverse action. The United States Court of Appeals for the Third Circuit has noted, however, that "[t]he denial of grievances is not an 'adverse action' for retaliation purposes." See Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015). Likewise, the Court finds that in this case, Plaintiff's inability to use nail clippers on one occasion, the denial of one food tray, and Plaintiff's inability to shower and use the exercise yard for a week do not rise to the level of adverse actions. See, e.g., Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir. 2009) (concluding that denial of recreation period did not rise to the level of adverse action); Quezada v. Fischer, No. 9:13-CV-00885 (MAD/TWD), 2017 WL 9509993, at *28 (N.D.N.Y. Aug. 31, 2017) (noting that the denial of a shower, soap, razor, and electric clippers did not rise to the level of adverse action), report and recommendation adopted, Quezada v. Gutwein, 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017); Martinez v. White, No. 5:13CV-P53-GNS, 2015 WL 1611840, at *3 (W.D. Ky. Apr. 10, 2015) (concluding that denial of showers for three days did not constitute adverse action); Purdie v. Graham, No. 9:09-CV-971 (GTS/ATB), 2012 WL 1085817, at *7 (N.D.N.Y. Feb. 29, 2012) (noting that the denial of several meals, showers, and recreation for a few days is not sufficient to rise to the level of adverse action); report and recommendation adopted in part and rejected in part, Purdie v. Connors, 2012 WL 1097321 (N.D.N.Y. Mar. 30, 2012); Kearney v. Goord, No. 09-CV-679, 2011 WL 1260076, at

*6 (W.D.N.Y. Mar. 4, 2011) (noting that the denial of several meals is de minimus); Lunney v. Brureton, No. 04 Civ. 2438 (LAK) (GWG), 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007) (noting that "[c]ase law suggests that the isolated or sporadic denial of privileges do[es] not suffice to state a claim of actionable retaliation"), report and recommendation adopted, 2007 WL 2050301 (S.D.N.Y. July 18, 2007). Moreover, receiving food loaf for a finite period of time is insufficient adverse action. See Jordan v. Wetzel, No. 16-307, 2019 WL 1382512, at *5 (W.D. Pa. Mar. 27, 2019); Branham v. Bergh, No. 2:06-cv-262, 2009 WL 728460, at *6 (W.D. Mich. Mar. 11, 2009). Finally, Plaintiff's receipt of an allegedly false misconduct does not rise to the level of sufficient adverse action because the misconduct charge was later dismissed. See Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (concluding that a misconduct charge against an inmate-plaintiff, which is later dismissed, does not rise to the level of adverse action for purposes of a retaliation claim). On the other hand, Plaintiff's stay in the hard cell for eighty-five (85) days is sufficient to permit Plaintiff to satisfy the second element of a retaliation claim. See Bracey v. Price, No. 09-1662, 2012 WL 6015727, at *6 (W.D. Pa. Dec. 3, 2012) (suggesting that placement in a hard cell for three (3) days was 'objectively de minimus" to satisfy the second element of a retaliation claim). Moreover, the Court assumes without deciding that Defendant Gilbert's alleged refusal to fix the leaking in Plaintiff's cell and refusal to remove him immediately from the cell after it flooded on January 6, 2015 constitutes adverse action sufficient to satisfy the second element of a retaliation claim.

As noted above, Defendants also argue that Plaintiff has not demonstrated a causal connection between these actions and his act of filing grievances. (Doc. No. 99 at 16-17.) While causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).

Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id.

In their brief in support of their motion for summary judgment, Defendants assert that "there is no evidence that all of the Defendants knew of Plaintiff's grievances and the Defendants who were involved in responding to the grievances filed by Plaintiff were largely uninvolved with his day-to-day routine." (Doc. No. 99 at 16.) The Court agrees with Defendants' argument. Nothing in the evidence presently before the Court would permit a finding that Defendants Kistler, Shipe, Drucis, Howel, Burrows, Heistand, Krzykowski, and Gilbert were aware of any written grievances submitted by Plaintiff. See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196-97 (3d Cir. 2015) (noting that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted"); Whitehead v. Rozum, No. 09-220J, 2012 WL 4078422, at *6 (W.D. Pa. Aug. 14, 2012) (concluding that the inmate-plaintiff had failed to demonstrate that corrections officers were "aware of his filing of . . . grievances such as to establish any motivating factor"), report and recommendation adopted, 2012 WL 4086717 (W.D. Pa. Sept. 17, 2012).

As noted above, Plaintiff's verbal complaints regarding the conditions in the cells also constitute protected activity. In their reply brief, Defendants argue that Plaintiff cannot show that his complaints substantially motivated Defendants' actions because they did not have the authority to move him. (Doc. No. 110 at 5-6.) This assertion, however, contradicts Defendants' statement of undisputed material facts, in which Defendants state that while Defendant Heistand did not have authority to move Plaintiff, Defendants Kistler, Shipe, Krzykowski, Drucis, and

Howel did have such authority.  (Doc. No. 85 ¶ 13.)  Moreover, nothing in the record before the Court suggests that Defendant Gilbert did not have the authority to address the leaking sink and toilet or to remove Plaintiff from the cell immediately when it flooded on January 6, 2015.  Upon review of the record, the Court finds that the evidence establishes that Defendants Heistand and Burrows had no authority to move Plaintiff from the hard cell despite his complaints.  Plaintiff, therefore, cannot maintain his retaliation claims against them, for these Defendants "would have made the same decision absent the protected conduct."  See Rauser, 241 F.3d at 334; see also Carter, 292 F.3d at 159.  Thus, the Court will grant summary judgment to Defendants with respect to Plaintiff's retaliation claims against Defendants Heistand and Burrows.

However, in light of the evidence presented by the parties, it is the Court's view that there are genuine disputes of material fact regarding whether the adverse action Plaintiff suffered is causally connected to Plaintiff's verbal complaints to Defendants Kistler, Shipe, Drucis, Howel, Krzykowski, and Gilbert.  Such issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  See Anderson, 477 U.S. at 252.  Given the discrepancies in the parties' view of the events, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendants Kistler, Shipe, Drucis, Howel, and Krzykowski refused to move Plaintiff from the hard cell and that Defendant Gilbert refused to take action regarding the leaking toilet and sink and refused to remove Plaintiff from the cell immediately after the flood because of Plaintiff's conduct in making verbal complaints as to his conditions of confinement.  Accordingly, the Court will deny summary judgment as to Plaintiff's retaliation claims against Defendants Kistler, Shipe, Drucis, Howel, Krzykowski, and Gilbert.

### 4.    Plaintiff's Sixth Amendment Claim

Plaintiff vaguely alleges that Defendants' actions violated his right to access the courts under the Sixth Amendment.  (Doc. No. 33 ¶ 187.)  The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defence."  See U.S. Const. amend. VI.  The Sixth Amendment, however, does not govern civil cases.  See Turner v. Rogers, 564 U.S. 431, 441 (2011).  Moreover, to the extent that Plaintiff believes his Sixth Amendment rights were violated during his prison disciplinary proceedings, his claim lacks merit "because the Sixth Amendment guarantees apply only to criminal prosecutions and prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment."  See Smith v. Holt, No. 4:CV-05-1889, 2006 WL 485352, at *2 (M.D. Pa. Feb. 28, 2006) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Kirby v. Illinois, 406 U.S. 682, 690 (1972)).  Thus, the Court will grant Defendants summary judgment on Plaintiff's Sixth Amendment claim.

### 5.    Plaintiff's Eighth Amendment Claims

Plaintiff also maintains that Defendants subjected him to various unconstitutional conditions of confinement in violation of the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards.  An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met

if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." See Hudson, 503 U.S. at 9. The Court addresses each deprivation alleged by Plaintiff in turn.

### a. Conditions in the Hard Cell

Plaintiff first suggests that Defendants Kistler, Shipe, Krzykowski, Howel, Drucis, Burrows, and Heistand violated his Eighth Amendment rights by subjecting him to various conditions in the hard cell for eighty-five (85) days. (Doc. No. 33 ¶ 190.) Specifically, Plaintiff maintains that his Eighth Amendment rights were violated when he was forced to consume the "foul drinking water" that left black marks inside of his cup and when he had to "eat/read/and write standing or sitting in awkward positions" because he did not have a table and stool. (Id.)

As an initial matter, the fact that Plaintiff did not have a table or stool during his confinement in the hard cell fails to establish a violation of the Eighth Amendment. See Freeman v. Miller, 615 F. App'x 72, 77-78 (3d Cir. 2015) (concluding that the inmate-plaintiff

could not maintain an Eighth Amendment claim based upon the denial of a desk, seat, showers, mattress, soap, recreation, mail, and toilet paper during placement in a hard cell). With respect to Plaintiff's claim regarding the drinking water, while "[p]oisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment," a prison's failure to "provide a maximally safe environment, one completely free from pollution or safety hazards," is not. See Carroll v. DeTella, 255 F.3d 470, 472-73 (7th Cir. 2001). In the context of Plaintiff's claim, "the objective prong requires him to demonstrate that he was personally exposed to unreasonably high levels of contaminated water." See Smith v. Buskirk, No. 12-4259, 2015 WL 328238, at *3 (E.D. Pa. Jan. 22, 2015) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). This prong requires "more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused by exposure" to the contaminants, but also an assessment by the Court as to whether the contamination is "so grave that it violates contemporary standards of decency to expose anyone unwilling to such a risk." See Helling, 509 U.S. at 36.

In his verified complaint and affidavit, Plaintiff maintains that he suffered a sore throat, nausea, and stomach pain from drinking the water in the hard cell, and that the water left black marks in his Styrofoam cup. (Doc. Nos. 33 ¶ 45, 106-3 ¶ 12.) As indicated above, the Court has deemed the facts set forth by Defendants to be undisputed unless otherwise noted. However, the Court must also view the facts and all reasonable inferences in favor of the nonmoving party. See Clement, 963 F.2d at 600; White, 862 F.2d at 59; see also Pearson v. Prison Health Serv., 850 F.3d 526, 541 n.5 (3d Cir. 2017) (noting that "when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed'" (quoting Anderson, 477 U.S. at 255)). Thus, having construed the material factual disputes regarding the drinking water in favor

of Plaintiff, the non-movant, the Court concludes that one may reasonably infer that the drinking water in the hard cell had some level of contamination. Plaintiff, however, fails to cite any evidence, other than his own statements, that his ailments were caused by the drinking water and, in addition, has made "no showing that such exposure [to the drinking water] violated contemporary standards of decency." See Brown v. Williams, 399 F. Supp. 2d 558, 566 (D. Del. 2005); see also Wolfe v. Christie, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) (granting summary judgment where the inmate-plaintiff who asserted contaminated water caused an occasional rash did not provide any evidence that the water as actually contaminated); Crocamo v. Hudson Cty. Corr. Facility, No. 06-1441, 2007 WL 1175753, at *6 (D.N.J. Apr. 19, 2007) (granting summary judgment where the plaintiffs who alleged unsanitary drinking water caused them to experience rashes and skin infections failed to produce "any evidence upon which a reasonable jury could find a constitutional violation had occurred"). As the United States Court of Appeals for the Seventh Circuit has noted, "the Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by a substantial number of free Americans." See Carroll, 255 F.3d at 472.

As to the subjective factor, the Court finds that Plaintiff has presented no evidence from which a factfinder could conclude that Defendants both were aware of a substantial risk to inmate health or safety and then affirmatively disregarded that risk. Even though Plaintiff complained about the water to Defendants Kistler, Shipe, Drucis, Howel, Burrows, Heistand, and Krzykowski, the pertinent evidence of record does not indicates that these Defendants knew that the water posed any serious health risks. Moreover, in response to Plaintiff's grievance regarding the water, Defendant Shomper replied that the drinking water came "from the local municipal water company which supplies to thousands of customers and is tested regularly."

(Doc. No. 106-4 at 30.)  In light of this evidence, the Court cannot conclude that there is a genuine issue of material fact as to whether Defendants had the requisite awareness to support a finding of deliberate indifference in this case.  See Smith, 2015 WL 328238, at *5 (concluding same).  Accordingly, the Court will grant summary judgment to Defendants with respect to Plaintiff's claims concerning conditions in the hard cell.

### b.    Denial of Fingernail Clippers

Next, Plaintiff suggests that Defendant McDonald violated his Eighth Amendment rights by denying him use of his fingernail clippers.  (Doc. No. 33 ¶ 193.)  The Third Circuit, however, has held that the withholding of nail clippers is not sufficient to maintain a violation of the Eighth Amendment.  See Washington v. Grace, 445 F. App'x 611, 616 (3d Cir. 2011) (summarily noting that an inmate-plaintiff cannot maintain an Eighth Amendment claim based upon the denial of nail clippers).  Accordingly, the Court will grant Defendants summary judgment as to this claim.

### c.    Receipt of Food Loaf

Plaintiff next maintains that Defendants violated his Eighth Amendment rights by placing him on "ice-cold food loaf" for nine (9) meals.  (Doc. No. 33 ¶ 193.)  "A Food Loaf is a 29-30 ounce loaf (raw weight) made of various food ingredients as specified by the [DOC's] standardized recipe . . . that when blended together and baked, contains all the necessary caloric and nutritional requirements."  Brown v. Sobina, No. 08-128E, 2009 WL 5173717, at *6 (W.D. Pa. Dec. 29, 2009).  While inmates have a right to a nutritionally adequate diet, see Laufgas v. Speziale, 263 F. App'x 192, 198 (3d Cir. 2008), they have no constitutional right to be served a particular type of meal.  See Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990).  Thus, "placing a prisoner on a food loaf diet for a limited period of time has . . . been found not to

assert a viable Eighth Amendment violation." See Wilson v. Wetzel, No. 3:CV-12-5, 2013 WL 4812497, at *6 (M.D. Pa. Sept. 9, 2013); see also Banks v. Meck, No. 10-555, 2013 WL 1101135, at *4 (W.D. Pa. Jan. 31, 2013), report and recommendation adopted, 2013 WL 1101127 (W.D. Pa. Mar. 15, 2013) (collecting cases noting that subjecting inmates to food loaf for as long as fourteen (14) days does not violate the Eighth Amendment). Likewise, the receipt of cold meals does not violate the Eighth Amendment. See Mosley v. Haidle, No. 3:18-CV-0305, 2018 WL 5263432, at *3-4 (M.D. Pa. Oct. 23, 2018). Accordingly, because Plaintiff cannot maintain an Eighth Amendment claim regarding the receipt of food loaf, the Court will grant Defendants summary judgment on this claim.

### d.      Denial of Dinner Tray

Next, Plaintiff contends that Defendant Howel violated his Eighth Amendment rights by denying him a dinner tray, and that Defendants Shipe, Heistand, and Hayes violated his rights by refusing to intervene when they observed Defendant Howel doing so. (Doc. No. 33 ¶ 196.) Plaintiff maintains that their actions caused him to go approximately 20 ½ hours without food. (Id.)

Even crediting Plaintiff's allegations as true, the Court concludes that Plaintiff has not demonstrated that the denial of a dinner tray violated his Eighth Amendment rights. As the Third Circuit has noted, "[t]he purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation." See Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009). Accordingly, the Court will grant Defendants summary judgment as to this claim.

### e.    Placement on Movement Restriction

Finally, Plaintiff maintains that his Eighth Amendment rights were violated when he was placed on movement restriction for seven (7) days, resulting in an inability to shower or access the exercise yard during that time.  (Doc. No. 33 ¶ 193.)  Plaintiff's inability to shower for seven (7) days, however, does not rise to the level of an Eighth Amendment violation, and nothing in the record suggests that Plaintiff was unable to use soap and water to clean himself in his cell. See Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (concluding that the denial of showers for twenty-eight (28) days did not rise to the level of an Eighth Amendment violation); Briggs v. Heidlebaugh, No. Civ. A. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. May 21, 1997) (concluding that a denial of showers for two (2) weeks does not amount to a constitutional violation).

Likewise, Plaintiff's inability to access the exercise yard during that seven (7)-day period fails to rise to the level of a constitutional violation.  The Third Circuit "has never extensively addressed in a precedential opinion when a deprivation of outdoor exercise amounts to a substantial deprivation."  See Barndt, 698 F. App'x at 677.  The Court of Appeals has noted, however, that "when making this determination, courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation."  See id.  In the instant case, there is no evidence of record suggesting that Plaintiff was unable to exercise within his cell and that he suffered any ill health effects.  Moreover, the deprivation of outdoor exercise for seven (7) days was not a substantial deprivation.  See id. (concluding that the inmate-plaintiff could not maintain an Eighth Amendment claim based upon deprivation of outdoor exercise for twenty-eight (28) days).  Accordingly, because the denial of

showers and outdoor exercise for seven (7) days does not rise to the level of an Eighth Amendment violation, the Court will grant Defendants summary judgment as to Plaintiff's claim regarding his placement on movement restriction.

**f.    Conditions Pertaining to Cell Leaking and Flooding**

Finally, Plaintiff asserts that Defendant Gilbert violated his Eighth Amendment rights by failing to have the leaking toilet and sink fixed, failing to "take substantial and immediate action" after Plaintiff notified him of his knee wound, and refusing to remove Plaintiff from his cell immediately after it flooded on January 6, 2015.  (Doc. No. 33 ¶ 199.)  Defendants maintain that they are entitled to summary judgment because these alleged failures do not rise to the level of constitutional violations.  (Doc. No. 99 at 27-30.)  The Court considers each allegation in turn.

Plaintiff first takes issue with Defendant Gilbert's alleged failure to have the leaking toilet and sink fixed.  While "[u]nsanitary conditions can be cruel and unusual," see Allah v. Bartkowski, 574 F. App'x 135, 138 (3d Cir. 2014), "the mere presence of an unsanitary condition at a given point in time does not rise to the level of an Eighth Amendment violation." See Walker v. Regan, No. 13-7556, 2018 WL 347685, at *3 (E.D. Pa. Jan. 9, 2018).  For example, the Third Circuit has found that confinement in a cell for thirty (30) days with a toilet that often backed up and overflowed is not sufficient to maintain an Eighth Amendment claim. See Burkholder v. Newton, 116 F. App'x 358, 363 (3d Cir. 2004).  Likewise, being held in a cell with an overflowing toilet and being "made to endure the stench of [one's] own feces and urine" does not rise to the level of an Eighth Amendment violation.  See Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996).  Moreover, while the undisputed facts indicate that Plaintiff complained about the leaks to Defendant Gilbert, the record is devoid of any evidence suggesting that Defendant Gilbert "subjectively knew of and appreciated a substantial risk of harm with regard

to that leak." See Santiago v. Guarini, No. 03-4375, 2004 WL 2137822, at *2 (E.D. Pa. Sept. 20, 2004). While Plaintiff did slip and fall because of water on the floor, "[s]lippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); see also Santiago, 2004 WL 2137822, at *2 (concluding that a toilet and sink leak in inmate's cell, which caused a slip-and-fall injury, did not present a substantial risk to the inmate's safety and were not objectively serious conditions).

Plaintiff next faults Defendant Gilbert for not "tak[ing] substantial and immediate action" after Plaintiff notified him of his knee wound. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197. However, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants

are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." <u>See Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).

Assuming <u>arguendo</u> that Plaintiff's open wound on his knee constitutes a serious medical need, there is no evidence of record that would reasonably permit a factfinder to conclude that Defendant Gilbert displayed deliberate indifference to Plaintiff's needs. The undisputed facts indicate that Plaintiff notified Defendant Gilbert of his injury and that Defendant Gilbert responded that he would notify the medical department. While medical staff did not come immediately, nothing in the record presently before the Court suggests that Defendant Gilbert failed to notify the medical department of Plaintiff's injury or delayed his receipt of treatment in any way. In sum, the Court finds that Plaintiff simply has not demonstrated that Defendant Gilbert had a sufficiently culpable state of mind to sustain an Eighth Amendment claim regarding his knee wound against him.

Plaintiff next contends that Defendant Gilbert violated his Eighth Amendment rights by failing to remove him from his cell immediately when it flooded on January 6, 2015. As noted <u>supra</u>, the flood caused feces and urine to emanate from the sink and toilet and spread to about four (4) other cells. (Doc. No. 85 ¶ 43.) Extension cords and electrical wires for Plaintiff's typewriter, radio, and television were submerged in the water. (<u>Id.</u> ¶ 44.) After Plaintiff complained to Defendant Gilbert, Defendant Gilbert indicated he would call maintenance, and maintenance responded "hours later." (<u>Id.</u> ¶¶ 45-46.) Plaintiff was not removed from the cell until maintenance responded. (<u>Id.</u> ¶ 46.)

While the conditions Plaintiff describes are unpleasant, the Court agrees with Defendants that they do not rise to the level of an Eighth Amendment violation. In this regard, the Court

must consider the length and degree of exposure to such conditions, for such conditions "might be tolerable for a few days and intolerably cruel for weeks or months." See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). The undisputed facts establish that Plaintiff remained in the cell after the flood for a matter of hours. Courts have concluded that exposure to human waste for longer periods of time was insufficient to establish an Eighth Amendment claim. See, e.g., Smith v. Copeland, 87 F.3d 265, 268-69 (8th Cir. 1996) (concluding that an inmate-plaintiff who was housed for four (4) days in a cell with raw sewage from an overflowing toilet failed to state an Eighth Amendment claim); Spears v. Ferguson, No. 08-5203, 2010 WL 909202, at *6 (W.D. Ark. Mar. 11, 2010) (finding no Eighth Amendment violation when the inmate-plaintiff spent nineteen (19) hours in a cell with residue, including excrement, resulting from flooding). But see DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that the inmate-plaintiff who alleged that flood conditions backed up toilets and caused exposure to urine and feces in the standing water for three (3) days stated an Eighth Amendment violation); McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001) (concluding that forcing an inmate-plaintiff to live in a feces-covered cell for three (3) days violated the Eighth Amendment). Thus, after having considered the undisputed facts and relevant evidence of record in light of the governing authority, the Court concludes Plaintiff cannot maintain an Eighth Amendment claim against Defendant Gilbert for failing to remove him from the flooded cell immediately on January 6, 2015.

In sum, Plaintiff has not demonstrated that Defendant Gilbert violated his Eighth Amendment rights with respect to the cell flooding and Plaintiff's wound. Accordingly, the Court will grant summary judgment to Defendants as to these claims.

### 6. Plaintiff's Ninth Amendment Claims

Plaintiff further asserts that Defendants' actions violated his rights under the Ninth Amendment. (Doc. No. 33 ¶¶ 187, 190-91, 193-94, 196, 199, 202.) The Ninth Amendment, however, "does not independently provide a source of individual constitutional rights." See Clayworth v. Luzerne Cty., 513 F. App'x 134, 137 (3d Cir. 2013); see also Soder v. Chenot, No. 4:CV 06-1522, 2007 WL 1098970, at *4 (M.D. Pa. Apr. 11, 2007) ("The Ninth Amendment does not independently secure any substantive constitutional rights, but rather has been interpreted to be a rule of construction. . . . A § 1983 civil rights claim premised on the Ninth Amendment fails because there are no constitutional rights secured by that amendment."). Thus, the Court will grant Defendants summary judgment on Plaintiff's Ninth Amendment claims.

### 7. Plaintiff's Fourteenth Amendment Claims

Plaintiff also maintains that Defendants' actions violated his rights under the Fourteenth Amendment's privileges and immunities, due process, and equal protection clauses. (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.) Plaintiff also suggests that Defendants violated his Fourteenth Amendment right to be free from the use of excessive force. (Id. ¶ 187.) The Court considers in each in turn below.

#### i. Privileges and Immunities Clause

To maintain a claim under the Fourteenth Amendment's Privileges and Immunities Clause, a plaintiff must show "(1) a violation of a fundamental right; and (2) a determination as to whether there are substantial reasons for discrimination and whether the degree of discrimination bears a close relation to them." See Thomas v. Cianfrani, No. 01-3096, 2009 WL 1704471, at *8 (E.D. Pa. June 17, 2009) (internal quotation marks omitted) (quoting Salem v. Blue Collar Workers Ass'n v. City of Salem, 33 F.3d 265, 268 (3d Cir. 1994)). The Clause

"only applies to uniquely federal rights."  See id. (citing Slaughter-House Cases, 83 U.S. 36, 73-74 (1873)).  For example, such rights include "the right to inform federal officials of violations of federal law, the right to be free from violence while in the lawful custody of a United States marshal, the right to enter the public lands, the right to vote in national elections, the right to petition Congress for redress of grievances, and the right to pass freely from state to state."  See In re Sacred Heart Hosp. of Norristown, 133 F.3d 237, 245 n.11 (3d Cir. 1988).  Since Slaughter-House, "the Privileges and Immunities Clause . . . has remained essentially moribund . . . and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights."  See id. at 244 (internal quotation marks omitted).  In the instant action, Plaintiff's amended complaint does not implicate any of these unique federal rights.  Accordingly, because the record contains no suggestion of a violation of a fundamental right under the Privileges and Immunities Clause, Defendants will be granted summary judgment as to these claims.

### ii.      Due Process

Plaintiff also suggests that Defendants' actions violated his right to due process under the Fourteenth Amendment.  (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.)  Specifically, Plaintiff maintains that Defendants' actions infringed on his liberty interests in redressing his grievances, remaining free from retaliation and cruel and unusual punishment, having access to safe drinking water, being protected from hazardous living conditions, being able to shower, and not being denied basic human needs.  (Id.)  Essentially, Plaintiff's allegations are premised on violations of his First, Sixth, and Eighth Amendment rights, as set forth above.

In adopting the "more-specific-provision-rule" established in County of Sacramento v. Lewis, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a

constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" See Betts v. New Castle Dev. Ctr., 621 F.3d 249, 260-61 (3d Cir. 2010). Here, because Plaintiff's alleged due process violations fit squarely within his First, Sixth, and Eighth Amendment claims, this rule forecloses any substantive due process claims Plaintiff may be raising. Thus, the Court will grant summary judgment to Defendants as to these claims.

While not clear from the complaint, Plaintiff may also be raising a procedural due process claim challenging his placement in a "hard cell" in the RHU for 85 days. Procedural due process protection, however, "for a state created liberty interest . . . is limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). The Third Circuit has "concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life." See Torrealba v. Hogsten, No. 3:CV-06-0108, 2009 WL 3242293, at *9 (M.D. Pa. Oct. 8, 2009) (citing Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002)); see also Wilson v. Hogsten, 269 F. App'x 193, 195-96 (3d Cir. 2008) (concluding that a prisoner's placement in administrative detention and an extended stay in the special housing unit did not constitute atypical and significant hardships). Nothing in the record before the Court suggests that during his 85-day stay in a "hard cell" in the RHU, Plaintiff was subjected to atypical and significant hardship. Accordingly, the Court will grant Defendants summary judgment as to Plaintiff's procedural due process claim.

### iii.      Equal Protection

Plaintiff further claims that Defendants' actions violated his right to equal protection under the Fourteenth Amendment.  (Doc. No. 33 ¶¶ 187, 190, 193, 196, 199, 202.)  The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals."  See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007).  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

In the instant case, Plaintiff does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals.  See Abdul-Akbar v. MeKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (concluding that prisoners are not a subject class).  Moreover, the only evidence before the Court pertaining to other inmates indicates that other inmates in cells neighboring Plaintiff's cell did not experience issues with their water supply.  (Doc. No. 86-1 at 15.)  Nothing in the record before the Court, however, suggests that Defendants intentionally treated Plaintiff differently from other inmates or treated other inmates more favorably in any respect.  Plaintiff's allegations that his equal protection rights were violated are simply "bald assertions" that fail to allege "occasions and circumstances" of different treatment.  See Young, 160 F. App'x at 266.  Accordingly, the Court will grant Defendants summary judgment as to Plaintiff's equal protection claims.

### iv.     Excessive Force

Plaintiff suggests that the "force of keeping [him] subject to the hazardous conditions of the hard cell" violated his right to be free from excessive force under the Fourteenth Amendment.  (Doc. No. 106-1 ¶ 7.)  Plaintiff cannot maintain a Fourteenth Amendment excessive force claim because he is not a pretrial detainee.  See Sylvester v. City of Newark, 120 F. App'x 419, 423 (3d Cir. 2005) (noting that excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment).  Accordingly, the Court will grant Defendants summary judgment as to Plaintiff's Fourteenth Amendment excessive force claim.[27]

---

[27] To the extent Plaintiff asserts an excessive force claim under the Eighth Amendment, nothing in the record suggests that Defendants used physical force against him that involved the "unnecessary and wanton infliction of pain."  See Whitley v. Albers, 475 U.S. 312, 319 (1986). Thus, Defendants are entitled to summary judgment on any Eighth Amendment excessive force claim that Plaintiff may be asserting.

### 8. Plaintiff's Universal Declaration of Human Rights Claims

Plaintiff also maintains that Defendants' actions violated his rights under the Universal Declaration of Human Rights. (Doc. No. 33 ¶¶ 188, 190-91, 193-94, 197, 200, 203.) The Universal Declaration of Human Rights, however, "is a non-binding declaration that provides no private rights of action." See United States v. Chatman, 351 F. App'x 740, 741 (3d Cir. 2009) (citing Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004)). Accordingly, Defendants will be granted summary judgment on Plaintiff's Universal Declaration of Human Rights claims.

### 9. Plaintiff's State Law Claims

Finally, Plaintiff raises various state law tort claims based upon Defendants' actions, including claims for intentional infliction of emotional distress, negligence, gross negligence, abuse of process, and conspiracy. (Doc. No. 33 ¶¶ 189, 192, 195, 198, 201, 204.) Defendants assert that they are protected from these claims by operation of the doctrine of sovereign immunity. (Doc. No. 99 at 37-38.)

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." See 1 Pa. Cons. Stat. Ann. § 2310. Pursuant to Section 8522(b) of Title 42, the following nine exceptions to sovereign immunity are recognized: (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous conditions posed by Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways under the jurisdiction of Commonwealth agency that are

created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of a toxoid or vaccine. See 42 Pa. Cons. Stat. Ann. § 8522(b). In the instant case, Plaintiff's claims do not fall within any of these nine (9) exceptions.

Moreover, sovereign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacities. See Story v. Mechling, 412 F. Supp. 2d 509, 518 (W.D. Pa. 2006), aff'd, 214 F. App'x 161 (3d Cir. 2007). Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" See Larsen v. State Emps' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). In the instant action, the relevant evidence of record demonstrates that Defendants were acting within the scope of their employment. Accordingly, because they are entitled to sovereign immunity, the Court will grant Defendants summary judgment as to Plaintiff's state law tort claims.

IV. **CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff's motion to exclude alleged evidence of his deposition. (Doc. No. 89.) The Court will also grant in part and deny in part Defendants' motion for summary judgment. (Doc. No. 84.) Specifically, the Court will deny Defendants' motion with respect to Plaintiff's First Amendment retaliation claims against Defendants Kistler, Shipe, Drucis, Howel, Krzykowski, and Gilbert. The Court will grant Defendants' motion with respect to Plaintiff's remaining claims. An appropriate Order follows.